**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOE HAND PROMOTIONS, INC.,

       Plaintiff,

v.                                                              No. CIV 15-216 BRB/WPL

CHARLIE'S SANDBOX, SANDBAR
SPORTS BAR AND GRILL, SB ABQ, LLC,
NEW MEXICO BREWING SYSTEMS,
LTD., JOE LOPEZ, and JOE LUJAN,

       Defendants.

G&G CLOSED CIRCUIT EVENTS, LLC,

       Plaintiff,

v.                                                              No. CIV 15-317 BRB/WPL

CHARLIE'S SANDBOX, SANDBAR
SPORTS BAR AND GRILL, THE
SANDBOX GROUP, LLC, SB ABQ, LLC,
NEW MEXICO BREWING SYSTEMS,
LTD., JOE LOPEZ, and JOE LUJAN,

       Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

       The Court referred Plaintiffs' Amended Motion for Default Judgment (Doc. 36) for me to

consider whether it is appropriate to enter default judgment in this matter and, if so, the amount

of damages to which Plaintiffs are entitled. (Doc. 40.)[1] In 15-cv-00216-BRB-WPL, Plaintiffs

seek default judgment against Defendants Charlie's Sandbox; Sandbar Sports Bar and Grill; SB

ABQ, LLC; Joe Lopez; and Joe Lujan. (Doc. 36.) In 15-cv-00317-BRB-WPL, Plaintiffs seek

---

[1] Unless otherwise noted, all "Doc." references are to documents in the lead case, *Joe Hand Promotions, Inc. v. Charlie's Sandbox et al.*, 15-cv-00216-BRB-WPL.

default judgment against Defendants Charlie's Sandbox; Sandbar Sports Bar and Grill; SB ABQ, LLC; Sandbox Group, LLC; Joe Lopez; and Joe Lujan. (*Id.*) As explained herein, I find that Plaintiffs in both cases failed to adequately serve Joe Lopez and Joe Lujan, and that default judgment is therefore inappropriate because the Court lacks personal jurisdiction. I recommend that the Court dismiss Joe Lopez and Joe Lujan from both cases, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m). I find that default judgment is appropriate as to Charlie's Sandbox, Sandbar Sports Bar and Grill, and SB ABQ, LLC, in 15-cv-00216, and as to Charlie's Sandbox, Sandbar Sports Bar and Grill, SB ABQ, LLC, and the Sandbox Group, LLC, in 15-cv-00317. I recommend that the Court grant the motion for default judgment as to those Defendants.

To the extent that default judgment is appropriate, I find that Plaintiffs are entitled to $250 in statutory damages, $500 in costs, and $250 in attorney's fees as to each case. I recommend that the Court assess a total award of $1,000, jointly and severally, against the Defendants in each case.

## DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 provides that a party seeking default judgment must first show the court that the opposing party failed to plead or otherwise defend and request that the clerk enter default on the docket, and then, following a clerk's entry of default, apply to the court for an order of default judgment. *See Rowley v. Morant*, 276 F.R.D. 669, 670 (D.N.M. 2011) (citing FED. R. CIV. P. 55(a), (b)(2)). Default judgment also requires that the court have personal jurisdiction over the defendant through adequate service of process. *See, e.g.*, *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008).

There are three questions to be answered before granting default judgment in this case: 1) Over which Defendants does the Court have personal jurisdiction by way of valid service of

process?; 2) For those Defendants, which Defendants are liable and for what?; and 3) What are the appropriate damages?

## I.  Service and Personal Jurisdiction

Federal Rule of Civil Procedure 4(e) provides that service on an individual within a judicial district of the United States may be effected by"

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Rule 4(h) governs serving a corporation, partnership, or association, and states that:

> [u]nless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
> (1) in a judicial district of the United States:
> > (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> > (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or
> (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) . . . .

To serve an individual in New Mexico:

> [p]ersonal service of process shall be made upon an individual by delivering a copy of a summons and complaint or other process:
>
> (1)(a) to the individual personally; or if the individual refuses to accept service, by leaving the process at the location where the individual has been found; and if the individual refuses to receive such copies or permit them to be left, such action shall constitute valid service; or (b) by mail or commercial courier service [provided that the envelope is addressed to the named defendant and further

provided that the defendant or a person authorized by appointment, by law or by this rule to accept service of process upon the defendant signs a receipt for the envelop or packed containing the process].

(2) If, after the plaintiff attempts service of process by either of the methods of service provided by Subparagraph (1) of this paragraph, the defendant has not signed for or accepted service, service may be made by delivering a copy of the process to some person residing at the usual of abode of the defendant who is over the age of fifteen (15) years and mailing by first class mail to the defendant at the defendant's last known mailing address a copy of the process; or

(3) If service is not accomplished in accordance with Subparagraphs (1) and (2), then service of process may be made by delivering a copy of the process at the actual place of business or employment of the defendant to the person apparently in charge thereof and by mailing a copy of the summons and complaint by first class mail to the defendant at the defendant's last known mailing address and at the defendant's actual place of business or employment.

N.M.R.A. Rule 1-004(F). To serve a corporation or other business entity:

(1) Service may be made upon:
   (a) a domestic or foreign corporation, a limited liability company or an equivalent business entity by service a copy of the process to an officer, a managing or general agent or to any other agent authorized by appointment, by law or by this rule to receive service of process. If the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant;
   (b) a partnership by serving a copy of the process to any general partner;
   (c) an unincorporated association which is subject to suit under a common name, by serving a copy of the process to an officer, a managing or general agent or to any other agent authorized by appointment, by law or by this rule to receive service of process. If the agent is one authorized by law to receive service and the statute so requires, by also mailing a copy to the unincorporated association.

(2) If a person described in Subparagraph (a), (b) or (c) of this subparagraph refuses to accept the process, tendering service as provided in this paragraph shall constitute valid service. If none of the persons mentioned is available, service may be made by delivering a copy of the process or other papers to be served at the principal office or place of business during regular business hours to the person in charge.

(3) Service may be made on a person or entity described in Subparagraph (1) of this paragraph by mail or commercial courier service in the manner [described above, in Subparagraph (1)(b) or Rule 1-004(F)].

4

N.M.R.A. Rule 1-004(G). The party seeking default judgment bears the burden of showing that it has "satisfied statutory and due process requirements so as to permit the Court to exercise personal jurisdiction over defendants." *Warden v. DirecTV, LLC*, 92 F. Supp. 3d 1140, 1143 (D.N.M. 2015).

Plaintiffs applied for entry of default and the Clerk filed an amended entry of default on February 11, 2016, finding that the previously listed Defendants, in both cases, had failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure. (Doc. 32.) Plaintiffs allege that Charlie's Sandbox and the Sandbar Sports Bar and Grill were personally served, in both cases, on June 26, 2015; that SB ABQ, LLC, Joe Lopez, and Joe Lujan were personally served, in both cases, on August 20, 2015; and that the Sandbox Group, LLV, was personally served in 15-cv-00317 on October 13, 2015. (Doc. 36.)

In support thereof, Plaintiffs filed several summonses returned as executed. (*See* Docs. 4-9.) Additionally, Judge Yarbrough ordered Plaintiffs to "provide supplemental answers or affidavits regarding the service issues discussed at [a March 23, 2016,] hearing by April 4, 2016." (Doc. 38 at 2.) Judge Yarbrough further instructed that Plaintiffs supplementation should "include citation to the particular service rule being relied upon by Plaintiff to show that service was accomplished." (*Id.*) Plaintiffs did not submit any supplemental information regarding service.

### A. 15-cv-00216-BRB-WPL

The Defendants at issue in 15-cv-00216 are Charlie's Sandbox; Sandbar Sports Bar and Grill; SB ABQ, LLC; Joe Lopez; and Joe Lujan. With respect to Sandbar Sports Bar and Grill, the Proof of Service shows that process was served at 8225 Washington NE, Albuquerque, NM 87113, on August 20, 2015, on a Charlie Guest. (Doc. 4.) The Proofs of Service for Charlie's

Sandbox (Doc. 5), Joe Lopez (Doc. 6), Joe Lujan (Doc. 7), and SB ABQ, LLC (Doc. 8), all reflect the same information: process was served on Charlie Guest on August 20, 2015, at 8225 Washington NE, Albuquerque, NM 87113.

At the hearing with Judge Yarbrough, counsel clarified that "Charlie Guest" is really Charlie Guess, who is the registered agent with the State of New Mexico for the business entities. (Doc. 38.) Because Guess is the registered agent, he is an appropriate person upon whom to serve process pursuant to N.M.R.A. Rule 1-004(G)(1). While it is unclear what relation the Washington address has to any of the business entities, that is immaterial under the Rule. As the registered agent, process was appropriately served on Guess on behalf of Charlie's Sandbox, Sandbar Sports Bar and Grill, and SB ABQ, LLC. Accordingly, the Court has personal jurisdiction over each of these Defendants.

It is worth noting that the Proofs of Service for the business entities reflect that the process server served the individual, rather than the registered agent. Pursuant to Federal Rule of Civil Procedure 4(l)(3), the incompleteness or other failings of the proof of service do not affect the validity of service. However, I recommend that the Court order Plaintiff to submit amended and corrected Proofs of Service for the business entities, reflecting that Guess is the registered agent rather than the individual, before entering final judgment.

With respect to Joe Lopez and Joe Lujan, the individual defendants, it is unclear what connection, if any, exists between these men and Guess. In the Complaint, Plaintiff alleges that Joe Lopez and Joe Lujan are co-owners of Sandbar Sports Bar and Grill. (Doc. 1 at 2-3.) However, despite repeated opportunities, Plaintiff submitted no evidence to support this allegation. Additionally, Plaintiff failed to establish or allege that it attempted proper service on either Lopez or Lujan under N.M.R.A. Rule 1-004(F)(1).  Even if service had been attempted

under Subparagraph (F)(1), Plaintiff failed to establish or allege that it attempted service under (F)(2) by mailing process through first class mail to the last known mailing address and delivering a copy of the process to some person residing at the defendant's usual place of abode. Furthermore, Plaintiff failed to allege or establish, under Rule 1-004(F)(3), that the Washington address is the "actual place of business or employment" of either Lopez or Lujan or that Guess is "the person apparently in charge thereof." Even if Plaintiff had established such facts, Plaintiff would also have been required to mail a copy of the summons and the complaint by first class mail to Lopez and Lujan at their last known mailing addresses and at their actual places of business or employment. Plaintiff failed to complete service under any of the provisions of Rule 1-004(F) for personal service upon an individual.

Because Plaintiff failed to properly serve Lopez or Lujan, I recommend that the Court deny Plaintiff's motion for default judgment as to these Defendants. Furthermore, given that more than one full year has elapsed from the filing of the Complaint in this case until now, Plaintiff has still failed to effect service on Lopez or Lujan, and Plaintiff has received multiple opportunities to perfect service, I recommend that the Court dismiss Lopez and Lujan without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

**B.  15-cv-00317-BRB-WPL**

The Defendants at issue in 15-cv-00317 are Charlie's Sandbox; Sandbar Sports Bar and Grill; the Sandbox Group, LLC; SB ABQ, LLC; Joe Lopez; and Joe Lujan. With respect to Sandbar Sports Bar and Grill and Charlie's Sandbox, the Proofs of Service show that process was served on Charles Guess, who is designated by law to accept service on behalf of the business entity, on June 26, 2015. (No. 15-cv-00317 Docs. 4, 5.) Proof of Service with respect to the Sandbox Group, LLC, shows that process was served on Charles Guess, as the person

7

designated by law to accept service on behalf of the Sandbox Group, LLC, on October 13, 2015. (Doc. 20.) The Proofs of Service for SB ABQ, LLC (No. 15-cv-00317 Doc. 11), Joe Lopez (No. 15-cv-00317 Doc. 9), and Joe Lujan (No. 15-cv-00317 Doc. 10) all reflect the same information: process was served on Charlie Guest on August 20, 2015, at 8225 Washington NE, Albuquerque, NM 87113.

Plaintiff in 15-cv-00317 properly served Charlie's Sandbox and Sandbar Sports Bar and Grill under N.M.R.A. Rule 1-004(G)(1). Accordingly, the Court has personal jurisdiction over each of these Defendants.

At the hearing with Judge Yarbrough, counsel clarified that "Charlie Guest" is really Charlie Guess, who is the registered agent with the State of New Mexico for SB ABQ, LLC. (Doc. 38.) Because Guess is the registered agent, he is an appropriate person upon whom to serve process pursuant to N.M.R.A. Rule 1-004(G)(1). While it is unclear what relation the Washington address has to SB ABQ, LLC, that is immaterial under the Rule. As the registered agent, process was appropriately served on Guess on behalf of SB ABQ, LLC. Accordingly, the Court has personal jurisdiction over the Defendant.

It is worth noting that the Proof of Service for SB ABQ, LLC, reflects that the process server served the individual, rather than the registered agent. Pursuant to Federal Rule of Civil Procedure 4(l)(3), the incompleteness or other failings of the proof of service do not affect the validity of service. However, I recommend that the Court order Plaintiff to submit an amended and corrected Proof of Service for SB ABQ, LLC, reflecting that Guess is the registered agent rather than the individual, before entering final judgment.

With respect to Joe Lopez and Joe Lujan, the individual defendants, it is unclear what connection, if any, exists between these men and Guess. In the Complaint, Plaintiff alleges that

Joe Lopez and Joe Lujan are co-owners of Sandbar Sports Bar and Grill. (No. 15-cv-00317 Doc. 1 at 2-3.) However, despite repeated opportunities, Plaintiff submitted no evidence to support this allegation. Additionally, Plaintiff failed to establish or allege that it attempted proper service on either Lopez or Lujan under N.M.R.A. Rule 1-004(F)(1).  Even if service had been attempted under Subparagraph (F)(1), Plaintiff failed to establish or allege that it attempted service under (F)(2) by mailing process through first class mail to the last known mailing address and delivering a copy of the process to some person residing at the defendant's usual place of abode. Furthermore, Plaintiff failed to allege or establish, under Rule 1-004(F)(3), that the Washington address is the "actual place of business or employment" of either Lopez or Lujan or that Guess is "the person apparently in charge thereof." Even if Plaintiff had established such facts, Plaintiff would also have been required to mail a copy of the summons and the complaint by first class mail to Lopez and Lujan at their last known mailing addresses and at their actual places of business or employment. Plaintiff failed to complete service under any of the provisions of Rule 1-004(F) for personal service upon an individual.

Because Plaintiff failed to properly serve Lopez or Lujan, I recommend that the Court deny Plaintiff's motion for default judgment as to these Defendants. Furthermore, given that more than one full year has elapsed from the filing of the Complaint in this case until now, Plaintiff has still failed to effect service on Lopez or Lujan, and Plaintiff has received multiple opportunities to perfect service, I recommend that the Court dismiss Lopez and Lujan without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

## II.    Liability

Plaintiffs in both cases brought causes of action for conversion, violation of 47 U.S.C. § 605, and violation of 47 U.S.C. § 553. (Doc. 1; No. 15-cv-00317 Doc. 1.) At the hearing with

Judge Yarbrough, counsel clarified that Plaintiffs seek default judgment only under 47 U.S.C. § 553. (Doc. 38 at 3.)[2]

Section 553(a)(1) states that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 553(a)(2) defines "the term 'assisting in intercepting or receiving' [to] include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1)." Section 553(c) specifically creates a civil cause of action such that any person harmed by a violation of subparagraph (a)(1) may bring suit in the district court. There may be increased penalties where a court finds that the violation "was committed willfully and for purposes of commercial advantage or private financial gain," or decreased penalties where a court finds that the violator "was not aware and had no reason to believe that his acts constituted a violation." 47 U.S.C. § 553(c)(3)(B-C).

Establishing a violation of § 553(a) does not require a showing of intent, but simply a showing that the person intercepted, received, or assisted in intercepting or receiving any communication service offered over a cable system without authorization. *See, e.g.*, *J and J Sports Prods. v. Coyne*, 857 F. Supp. 2d 909, 916 (N.D. Cal. 2012) (commercial establishment violatied § 553 by broadcasting pay-per-view boxing match without its exclusive distributor's permission, even though the cable operator providing service to the establishment knew that it was not allowed to provide the match to the commercial customer and did not inform the

---

[2] When faced with a motion for default judgment where judgment could be entered as to violations of 47 U.S.C. § 553 or § 603, other courts have applied the presumption that interception was by cable and the violation comes under § 553. *See, e.g.*, *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 273 (E.D. Pa. 2014).

commercial customer that it needed to contact the distributor); *see also Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270-71 (E.D. Pa. 2014) (at the default judgment stage, the court accepts as true all well-pleaded factual allegations and finds liability if the plaintiff has stated a cause of action).

As to 15-cv-00216, Plaintiff purchased "exclusive nationwide television distribution rights" for a televised Ultimate Fighting Championship ("UFC") fight on March 16, 2013. (Doc 1.) As part of its distribution rights, Plaintiff sublicensed the rights to publicly display the fight to various establishments, including hotels, racetracks, bars, etc. The Defendants did not purchase a license to publicly display the fight.

Plaintiff alleges that Charlie's Sandbox, a New Mexico corporation, Sandbar Sports Bar and Grill, a New Mexico corporation, and SB ABQ, LLC, a New Mexico corporation, "individually or collectively[] operate an establishment known as 'Charlie's Sandbox' and 'The Sandbar Sports Bar and Grill.'" (*Id.*) One of Plaintiff's investigators, Laura Newland, went to Charlie's Sandbox on March 16, 2013. (Doc. 38 Ex. 1.) She did not pay a cover charge to enter the establishment. Newland observed a "Dish" satellite on the ground several feet from the main entrance and a "Dish" tent set up outside the establishment advertising Dish services with brochures and bottles of water. (*Id.*) Inside, Newland observed six television screens displaying the fight. Newland avers that Charlie's Sandbox can hold approximately 150 people, and that she conducted three headcounts during her hour watching the fight, observing 68, 78, and 74 patrons. (*Id.*)

As to 15-cv-00317, Plaintiff purchased "exclusive nationwide television distribution rights" for a televised WBC fight on April 20, 2013. (No. 15-cv-316 Doc 1.) As part of its distribution rights, Plaintiff sublicensed the rights to publicly display the fight to various

establishments, including hotels, racetracks, bars, etc. The Defendants did not purchase a license to publicly display the fight.

Plaintiff alleges that Charlie's Sandbox, a New Mexico corporation, Sandbar Sports Bar and Grill, a New Mexico corporation, SB ABQ, LLC, a New Mexico corporation, and The Sandbox Group, LLC, a New Mexico Corporation, "individually or collectively[] operate an establishment known as 'Charlie's Sandbox' and 'The Sandbar Sports Bar and Grill.'" (*Id.*) Newland again went to Charlie's Sandbox on April 20, 2013. (Doc. 38 Ex. 2.) She did not pay a cover charge to enter the establishment. Newland did not observe a satellite dish or cable box. (*Id.*) Inside, Newland observed six television screens displaying the fight. Newland avers that Charlie's Sandbox can hold approximately 150 people, and that she conducted three headcounts during her two hours watching the fight, observing 48, 62, and 68 patrons. (*Id.*)

To establish a violation of § 553, Plaintiffs were simply required to show that the business entities had not purchased a license or otherwise been authorized to publicly display the UFC fight in question. *See, e.g.*, *J & J Sports Prods., Inc. v. De La Cerda*, No. 11-1896, 2013 WL 5670877, at *5 (E.D. Cal. Oct. 16, 2013) (unpublished) (noting that defendants are strictly liable under § 553(a) for actual or statutory damages). While Plaintiffs did not submit any evidence on this point, the well-pleaded factual allegations in the Complaints control. *See, e.g.*, *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994); *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Plaintiffs established that the business defendants broadcasted the fights on March 16 and April 20, 2013, the fights were televised on cable, and that the defendants did not have permission or authorization to broadcast the fights. With respect to 15-cv-00216, I recommend that the Court find that Charlie's Sandbox, Sandbar Sports Bar and Grill, and SB ABQ, LLC, violated 47 U.S.C. § 553(a) on March 16, 2013. With respect to 15-cv-00317, I

12

recommend that the Court find that Charlie's Sandbox, Sandbar Sports Bar and Grill, SB ABQ, LLC, and the Sandbox Group, LLC, violated 47 U.S.C. § 553(a) on April 20, 2013.

### III.    Damages

Section 553(c) prescribes the damages available in these cases. The court may award the aggrieved party either 1) "the actual damages suffered by him . . . and any profits of the violator that are attributable to the violation . . . ; [the aggrieved party is] required to prove . . . violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation;" or 2) "an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." Additionally, if the court finds that "the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory . . . [by] not more than $50,000." 47 U.S.C. § 553(c)(3)(B). Conversely, if the court determines that "the violator was not aware and had no reason to believe that his acts constituted a violation . . . , the court in its discretion may reduce the award of damages to a sum of not less than $100." § 553(c)(3)(C). The court may also "direct the recovery of full costs, including awarding reasonable attorneys' fees." § 553(c)(2)(C).

At the hearing with Judge Yarbrough, counsel stated that Plaintiffs each sought the statutory maximum of $50,000 and cited the deterrent value of damages. (Doc. 38 at 3.) Counsel argued that the business defendants willfully violated the statute because there were two separate violations. (*Id.*) Counsel further stated that each Plaintiff incurred costs of $512.50 and attorney fees of $1,000, and that Plaintiffs seek pre- and post-judgment interest. (*Id.* at 4.) Notably, throughout the hearing with Judge Yarbrough, counsel indicated that he would submit

supplemental information, including information on damages. Despite having the opportunity to present evidence at the hearing and the further opportunity to submit additional evidence more than a week after the hearing, Plaintiffs submitted no additional evidence on the issue of damages. The only statement regarding actual damages came after Judge Yarbrough inquired as to what the cost would have been if Defendants had paid for the signal, and counsel indicated that for 250 seats, it would have cost between $2,500 and $4,000. (Doc. 38 at 3.)

Turning first to the issue of willfulness, Plaintiffs did not present any evidence suggesting that the defendants purchased a license for the fights that did not qualify as a commercial license or that the defendants unlawfully descrambled the signal. Indeed, Plaintiffs presented no evidence at all explaining how the defendants obtained the fight. In other cases, courts have declined to find willfulness where bars or restaurants failed to read their contract with cable operators, which required the bar or restaurant to obtain the distributor's permission, when the cable operator permitted the establishment to order the fight. *See, e.g.*, *Coyne*, 857 F. Supp. 2d at 918. Furthermore, Plaintiffs investigator noted that the defendants did not charge a cover to enter the establishment on the nights in question and did not advertise for these or upcoming fights. (Doc. 38 Exs. 1, 2.) Accordingly, I recommend that the Court conclude the violations were not willful and that it is therefore inappropriate to award enhanced damages under the circumstances.

As to actual or statutory damages, the Plaintiffs have totally failed to prove their damages. Plaintiffs have not been diligent in supplementing the record on this issue, despite multiple opportunities to do so. The only statement as to actual damages is counsel's response that a license for an establishment with 250 seats would cost between $2,500 and $4,000. However, this statement is not evidence. The Complaints include no statement about damages.

14

Therefore, I find that I am without sufficient information to make a determination as to actual damages.

This lack of information leaves me with no choice but to evaluate the appropriateness of statutory damages under the circumstances. Initially, I note that a total of approximately 150 people attended the establishment on the nights in question, that the defendants did not charge a cover or advertise the fights, and that the Plaintiffs failed to supplement the record with any information about damages. Given the small number of patrons at the establishment, the lack of evidence concerning whether the patrons attended for the purpose of viewing the fight, and the lack of information on other damages, I find that the minimum statutory award of $250 per violation is appropriate. Accordingly, I recommend that the Court award statutory damages of $250 to each Plaintiff, to be assessed jointly against all remaining defendants in each case.

While it is in the Court's discretion to award costs and fees to a prevailing aggrieved party, I find that it would be unjust, under the circumstances, to award each Plaintiff their full request of $1,512.50 in costs and fees. I recommend that the Court award each Plaintiff costs in the amount of $500, and a modified order of attorneys' fees of $250 in each case.

Given that the Defendants failed to appear or defend, the Plaintiffs applied for and received a Clerk's entry of default, the Court has personal jurisdiction over the Defendants, and the Plaintiffs properly stated a claim for relief under 47 U.S.C. § 553(a), I recommend that the Court enter default judgment as to each of the entity defendants.

I recommend that the Court enter default judgment in No. 15-cv-00216-BRB-WPL against Charlie's Sandbox, Sandbar Sports Bar and Grill, and SB ABQ, LLC, jointly and severally in the total amount of $1,000, with $250 being the statutory fine, $500 in costs, and $250 in attorney's fees. I suggest that the Court decline Plaintiff's request for pre-judgment

interest in this case because § 553(c) does not speak to interest and because statutory damages are considered like punitive damages—designed to deter—and should not accrue pre-judgment interest. *See, e.g.*, *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 117 (E.D.N.Y. 2011).

I recommend that the Court enter default judgment in No. 15-cv-00317-BRB-WPL against Charlie's Sandbox, Sandbar Sports Bar and Grill, SB ABQ, LLC, and the Sandbox Group, LLC, jointly and severally in the total amount of $1,000, with $250 being the statutory fine, $500 in costs, and $250 in attorney's fees. I again suggest that the Court decline Plaintiff's request for pre-judgment interest in this case because § 553(c) does not speak to interest and because statutory damages are considered like punitive damages—designed to deter—and should not accrue pre-judgment interest. *See id.*

## CONCLUSION

As discussed above, I recommend that the Court find it lacks personal jurisdiction over Defendants Joe Lopez and Joe Lujan in both cases, based on lack of service, and dismiss these defendants without prejudice pursuant to Federal Rule of Civil Procedure 4(m). I recommend that the Court find liability against all entity defendants in both cases under 47 U.S.C. § 553(a) and grant the Plaintiffs' motion for default judgment as to each entity defendant. Finally, I recommend that the Court award each Plaintiff $250 in statutory damages, $500 in costs, and $250 in attorney's fees, to be assessed jointly and severally against the entity defendants for a total of $1,000 per case.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.